IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

OTIS JEROME THOMAS, )
)
    Plaintiff, )
)
v. ) Civil Action No.: 3:17cv305-SMD
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )

# MEMORANDUM OPINION

**I.    INTRODUCTION**

Otis Jerome Thomas ("Plaintiff") filed an application for supplemental security income on April 11, 2014, alleging an amended disability date to correspond with the filing date. Plaintiff's application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review of that decision

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 14); Def.'s Consent to Jurisdiction (Doc. 13). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES and REMANDS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). "[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-three to forty-five years old during the relevant period. R. 36. He completed the eighth grade and has past relevant work as a construction laborer. R. 46, 205, 224. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since April 11, 2014, the application date[.]" R. 33. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "hypertension with gross ongoing non-compliance; history of moderate stenosis, left anterior descending artery; stenosis, cervical spine; questionable distant history of gout; and carpal tunnel syndrome, right." R. 33. The ALJ also found that Plaintiff has the following non-severe mental impairment: "substance abuse, to wit; marijuana and alcohol[,]" R. 34, and that Plaintiff has the following "not medically determinable impairment[s]": lumbar impairment; impairment of the right lower extremity; asthma and cervical radiculopathy[,]" R. 35. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" R. 35. Next, the ALJ articulated Plaintiff's RFC as follows: "the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c)." R. 35. At Step Four, the ALJ concluded that Plaintiff is "unable to perform any past relevant work." R. 46. The ALJ concluded, at Step Five, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 46. Accordingly, the ALJ

5

concluded that Plaintiff "has not been under a disability . . . since April 11, 2014, the date the application was filed[.]" R. 47.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents three arguments in his "Statement of the Issues": 1) "The Commissioner's decision should be reversed because the ALJ erred by completely rejecting the medical opinions expressed by the consulting neurologist"; 2) "The Commissioner's decision should be reversed because the ALJ erred by acting as both Judge and medical doctor"; and 3) "The Commissioner's decision should be reversed because the ALJ improperly rejected [Plaintiff's] testimony and failed to properly consider his poverty." Pl.'s Br. (Doc. 10) at 3.

## V. DISCUSSION

Plaintiff argues that the ALJ reversibly erred by "completely rejecting the medical opinions expressed by the consulting neurologist[,]" Dr. Hisham Hakim. (Doc. 10) at 3. At the request of the Social Security Administration, Plaintiff presented to Dr. Hakim, who performed a physical examination of Plaintiff as well as electrodiagnostic studies. R. 337-359. Based upon those assessments, Dr. Hakim gave a diagnostic impression of Plaintiff, R. 340, and completed a Medical Source Statement ("MSS") opining as to what Plaintiff could do despite his condition, R. 343-54. The ALJ found Dr. Hakim's report and opinion "inconsistent with the record as a whole" and awarded them "no weight." R. 45. Plaintiff argues that the ALJ's rationale for affording the report and opinion no weight was faulty considering "there is no other medical evidence of record that detracts from the medical

6

opinions expressed by Dr. Hakim" and that Dr. Hakim's opinions are actually supported by the opinions and examinations of Dr. Temple, another consulting physician (whom the ALJ afforded no weight), and of a Vocational Rehabilitation counselor from the Alabama Department of Rehabilitation Services (whom the ALJ afforded no weight), which Plaintiff was directed to contact by the ALJ at the hearing. (Doc. 10) at 5-9. As explained below, the undersigned agrees.

When formulating a claimant's RFC, an ALJ must consider and evaluate every medical opinion received, and must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1527 ("Regardless of its source, we will evaluate every medical opinion we receive."). Generally, an ALJ is required to afford more weight to the opinions of examining physicians over non-examining physicians; the opinions of treating physicians over non-treating physicians; and the opinions of specialists (on issues within their areas of expertise) over non-specialists. *See* 20 C.F.R. § 404.1527(c)(l)-(2), (5).

When a claimant's treating physician opines to the nature and severity of a claimant's impairments, the ALJ must give that opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion is not entitled to controlling weight, the case law and the regulations require the ALJ to give substantial weight to the opinion, unless there is good

cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(d). The same treatment, however, is not applicable to the opinion of a one-time examining physician. Instead, unless the consulting physician's opinion is consistent with other medical evidence in the record, the opinion of a one-time examiner is not entitled to great weight and may be rejected. *Moncrief v. Astrue,* 300 F. App'x 879, 881 (11th Cir. 2008) (noting that, if the opinion of a consulting physician is consistent with other medical evidence, it is entitled to great weight (citing 20 C.F.R. § 404.1527(f)(2)(i))); *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (the opinions of consultative examiners are "not entitled to deference because as one-time examiners they [are] not treating physicians"). If the medical opinion of a consultative examiner is rejected, the ALJ must point to substantial evidence in the record that establishes a contrary finding. *Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018) (noting that "[a]n ALJ may reject any medical opinion if the evidence supports a contrary finding"); *Flowers v. Comm'r of Soc. Sec.,* 441 F. App'x 735, 742 (11th Cir. 2011); (finding that "the ALJ's reasons for discounting the treating and examining physicians' medical opinions are supported by substantial evidence"); *Sharfarz,* 825 F.2d at 280-81 (holding that the ALJ could not rely upon the medical opinions of non-treating physicians without providing cause for "not according [the opinions of all of the treating and examining physicians] substantial or considerable weight").

Here, after examining Plaintiff, Dr. Hakim opined, in part, that

[Plaintiff] could frequently lift 10 pounds. He could occasionally lift and carry 20 pounds. He could sit 2 hours at one time and 4 hours total in an 8-

8

> hour workday. He could stand 1 hour at one time and 2 hours total in an 8-hour workday. He could walk 1 hour at one time and 2 hours total in an 8-hour workday. He did not require the use of a cane to ambulate. He could occasionally use his right hand for reaching overhead, reaching in all other directions, handling, fingering, feeling, pushing and pulling. He could frequently use his left hand for reaching overhead, reaching in all other directions, handling, fingering, feeling, pushing and pulling. He was right hand dominant. He could occasionally use his right foot for the operation of foot controls. He could frequently use his left food for the operation of foot controls. . . .

R. 44-45, 343-47. The ALJ afforded Dr. Hakim's medical opinion "no weight" because he found the opinion to be "inconsistent with the record as a whole," and concluded that Plaintiff could perform the full range of medium work.[4] R. 35, 45. As grounds for his rejection of Dr. Hakim's opinion, the ALJ pointed to several "inconsistencies" in the evidence.

First, the ALJ found it troubling that Dr. Hakim diagnosed Plaintiff with "moderate right carpal tunnel syndrome" despite Plaintiff's failure to "mention having any problems using his hands in the Function Report." R. 45; 230-37. Specifically, the ALJ noted that Plaintiff did not report in the Function Report having problems "with personal care including dressing, bathing, caring for his hair, feeding himself, shaving, and using the toilet." R. 45. The ALJ also noted that Plaintiff, according to the Function Report, "was able to prepare his own meals" and "was able to do the laundry, clean, and iron." R. 45. Additionally, the ALJ noted that Plaintiff's muscle strength was 5/5 in April 2014 and 5/5 in October 2015, including handgrip. R. 45. While Dr. Hakim opined that Plaintiff could

---
[4] Under the Secretary's regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c) (1986).

"occasionally use his right hand for reaching overhead[,]" the ALJ noted that Plaintiff reported in the Function Report that he could reach overhead with no limitation. R. 45; 235. Further, the ALJ noted that Plaintiff reported in the Function Report that he could lift 15 pounds while Dr. Hakim opined that Plaintiff could only "frequently lift 10 pounds." R. 45, 235.

The undersigned does not find Plaintiff's assertions in his Function Report contradictory to Dr. Hakim's diagnosis of carpal tunnel syndrome. To be sure, it may be assumed that individuals suffering from carpal tunnel syndrome have pain associated with using their hands in certain ways. However, it may also be assumed that those suffering from carpal tunnel syndrome may use their hands in other ways that do not elicit pain, or that those suffering with carpal tunnel syndrome may continue to use their hands despite the associated pain. Thus, even though Plaintiff did not mention in his Function Report that his conditions affected the use of his hands, the undersigned is not convinced that Dr. Hakim's diagnosis of carpal tunnel syndrome is contradicted—or even unsupported—by the record. Plaintiff's statements within the Function Report that he is able to care for himself, cook, and perform certain household chores, or that his muscle strength was 5/5 does not otherwise undermine the undersigned's conclusion.

Further, the undersigned does not find Plaintiff's statement in the Function Report that he can "lift 15 pounds" contradictory to Dr. Hakim's opinion that Plaintiff can "*frequently* lift 10 pounds." Had Plaintiff qualified his statement in the Function Report with some indication as to *how often* he could lift fifteen pounds, the undersigned might

10

then conclude that Plaintiff's testimony undermines Dr. Hakim's medical opinion. However, as it stands, Plaintiff's statement in the Function Report is not contrary to Dr. Hakim's opinion regarding Plaintiff's limitations. This is particularly so considering that Dr. Hakim also opined that Plaintiff could "occasionally" lift eleven to twenty pounds. R. 343.

Similarly, the undersigned concludes that Plaintiff's written statement in the Function Report that he "can reach overhead" does not conflict with Dr. Hakim's opinion that Plaintiff could "occasionally use his right hand for reaching overhead." To be sure, Plaintiff's statement that he can reach overhead is somewhat confusing considering that, immediately above the statement, Plaintiff checked the box indicating that his conditions affect his ability to reach. Nonetheless, whether the notation that he can reach overhead is simply a scrivener's error—i.e., the statement mistakenly says "can" when it should say "cannot"—or whether Plaintiff intended to report that he can reach overhead but also report—by checking the box—that he is unable to reach forward or to the side is of no consequence to the undersigned's determination that the statement does not conflict with Dr. Hakim's opinion. Indeed, Plaintiff has made no representations regarding the frequency with which he is able to reach in any direction, and the undersigned is unwilling to presume that he has no limitations with regards to how frequently he can reach. Additionally, Dr. Hakim opined that Plaintiff is able to "frequently" reach overhead and in all other directions with his left hand. R. 344. It could be, then, that Plaintiff's statement that he is able to reach overhead is due in large part to a less restrictive use of his left hand. Therefore,

11

without having greater specificity from Plaintiff in the Function Report regarding his ability to specifically reach overhead, the undersigned cannot conclude that Plaintiff's statement in the Function Report is contrary to Dr. Hakim's opinion.

Second, the ALJ took issue with Dr. Hakim's opinion that Plaintiff could stand and walk for one hour at a time and two hours total in an eight-hour workday, while Plaintiff reported in the Function Report that he could cook (for approximately two hours per day, if he is "in the mood"); clean "a little bit at a time" (for approximately three hours); shop at WalMart (monthly for about forty-five to ninety minutes); walk a quarter of a mile (and can resume walking after resting for approximately ten to fifteen minutes); play ball (although he tires doing so); fish (when he can); and mow the grass (every three weeks if able). R. 45, 231-35. Importantly, Dr. Hakim's opinion that Plaintiff could stand and walk for one hour at a time hinged upon Plaintiff's ability to do those activities *uninterrupted*. R. 344. Nothing in Plaintiff's Function Report indicates that Plaintiff cooks for two hours per day uninterrupted; that Plaintiff cleans for three hours a day uninterrupted; or that he does any activity, uninterrupted, for a time allotment greater than what Dr. Hakim opined was his limitation. Thus, the undersigned does not find Plaintiff's statements in the Function Report contradictory of Dr. Hakim's opinion regarding Plaintiff's limitations.

Finally, the ALJ found problematic Dr. Hakim's opinion that Plaintiff could sit two hours at one time and four hours total in an eight-hour workday because Plaintiff did not mention having any problems with sitting in the Function Report. Specifically, the ALJ pointed to Plaintiff's admission that he would watch television for about four hours and

12

would go outside every day and sit on the porch to talk to his friends. Plaintiff also reported that he would sit outside and talk to his friends, play cards, ride in the car to stores, and attend church. However, like his opinion regarding Plaintiff's ability to stand and walk, Dr. Hakim's opinion regarding Plaintiff's ability to sit two hours at a time was based upon Plaintiff's ability to do so *uninterrupted*. R. 344. Nothing in Plaintiff's function report contradicts that conclusion considering that, when Plaintiff referenced sitting-related activities, he did not specify that the time he spent doing them was uninterrupted.

While the ALJ was not required to give Dr. Hakim's opinion deference, he was required to consider the opinion, state the weight he afforded the opinion, and provide reasoning as to why he afforded the opinion that weight. As set forth above, the ALJ's reasoning for affording Dr. Hakim's opinion no weight was not supported by the evidence he cited in the record. Even considering the ALJ's opinion in its entirety, the undersigned is unable to point to substantial evidence that undermines Dr. Hakim's opinion regarding Plaintiff's diagnosis or his limitations. In other words, even if the undersigned focuses on the ALJ's opinion *in toto* instead of looking only to the specific reasoning the ALJ provided to afford Dr. Hakim's opinion no weight, the undersigned is unable to conclude that there is evidence to support the ALJ's rejection of Dr. Hakim's medical conclusions. This is particularly concerning to the undersigned considering the fact that the ALJ not only afforded Dr. Hakim's medical opinion no weight, but he also afforded *all* of the opinion evidence no weight. This included the opinions of the two other physicians who performed

consultative examinations of Plaintiff.[5] R. 43 (affording no weight to Dr. Temple); R. 44 (affording no weight to Dr. Kline). Admittedly, Plaintiff's RFC determination ultimately lies with the ALJ and not with a physician. However, it does appear, at least with regards to Dr. Hakim, that the ALJ dismissed his medical opinion based upon flawed reasoning. Therefore, upon remand, the ALJ should consider the opinions of the consultative physicians and, if it is determined that those opinions should be rejected, provide sound reasoning for such rejection. This matter is due to reversed and remanded to the Commissioner.[6]

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is REVERSED and that this matter is to be REMANDED to the Commissioner for further proceedings consistent with this opinion. A separate judgment will issue.

Done this 25th day of March, 2018.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE

---

[5] There is no medical evidence in the record from a treating physician.

[6] Because the court has determined that reversal and remand to the Commissioner is required on the basis of Plaintiff's first argument, the court does not reach Plaintiff's remaining arguments.